UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| HEALTH RECOVERY CENTER, INC., a Minnesota corporation, and<br><br>HEALTH RECOVERY SYSTEMS, INC., a Minnesota corporation,<br><br>Plaintiffs,<br><br>v.<br><br>INNERBALANCE LLC, a Colorado limited liability company,<br><br>INNERBALANCE HEALTH CENTER, LLC, a Colorado limited liability company,<br><br>INNERBALANCE HEALTH SYSTEMS, LLC, a Colorado limited liability company,<br><br>JOSEPH W. EISELE, and<br><br>RON GRAHAM,<br><br>Defendants. | Civil File No. 05-880 JMR/FLN<br><br>**<u>COMPLAINT</u>** |

Plaintiffs Health Recovery Center, Inc. ("Health Recovery Center"), and Health Recovery Systems, Inc. ("Health Recovery Systems"), for their Complaint against Defendants InnerBalance LLC ("InnerBalance"), InnerBalance Health Center, LLC ("InnerBalance Health Center"), InnerBalance Health Systems, LLC ("InnerBalance Health Systems"), Joseph W. Eisele ("Eisele") and Ron Graham ("Graham"), state and allege as follows:

SCANNED
MAY 04 2005
U.S. DISTRICT COURT MPLS

## INTRODUCTION

1. Plaintiffs bring this action for injunctive relief arising from Defendants' trademark infringement, unfair competition, breach of contract, misappropriation of trade secrets and conversion.

2. InnerBalance is a former franchisee of Health Recovery Systems.

3. Although the franchise was terminated in November 2004, InnerBalance is continuing to use Plaintiffs' trademarks, Plaintiffs' advertising and educational materials and is misappropriating Plaintiffs' trade secrets, including but not limited to Plaintiffs' highly confidential Operations Manual, all in violation of the post-termination obligations contained in the Franchise Agreement. A copy of the Franchise Agreement is attached as Exhibit A to this Complaint. Copies of the Addendum and Second Addendum to the Franchise Agreement are attached as Exhibits B and C to this Complaint.

4. The Franchise Agreement includes an arbitration clause, however, claims for injunctive relief of the type asserted in this Complaint are expressly excluded from any arbitration requirement.

5. Plaintiffs anticipate seeking damages from InnerBalance in an arbitration proceeding pursuant to the terms of the Franchise Agreement, and anticipate seeking damages from the other Defendants in arbitration or in an Amended Complaint as appropriate.

6. Eisele and Graham own and operate InnerBalance and have signed Personal Guarantees and Assumptions of Franchisee's Obligations in which they personally guaranty InnerBalance LLC's performance under, and accept personal liability for, InnerBalance's breaches of the Franchise Agreement. Copies of the Personal Guarantees

and Assumptions of Franchisee's Obligations executed by Eisele and Graham are attached as Exhibits D and E to this Complaint.

7. Defendants InnerBalance Health Center and InnerBalance Health Systems are, on information and belief, also owned and operated by Eisele and Graham, and are not parties to any Franchise Agreement with Plaintiffs, but, on information and belief, have purported to act as franchisees under the Franchise Agreement between InnerBalance and Health Recovery Systems.

8. The actions of InnerBalance, InnerBalance Health Center, InnerBalance Health Systems, Eisele and Graham, constitute infringement of a federally registered trademark, unfair competition, breach of contract, misappropriation of trade secrets and conversion.

9. The claims alleged in this Complaint arise under the Lanham Act, 15 U.S.C. § 1051, et seq., the Minnesota Trade Secrets Act, Minn. Stat. 325C.01, et seq., and the common law of the state of Minnesota.

**PARTIES, JURISDICTION AND VENUE**

10. Plaintiff Health Recovery Center, Inc., is a Minnesota corporation with its principal place of business at 3255 Hennepin Avenue South, Minneapolis, Minnesota.

11. Plaintiff Health Recovery Systems, Inc. is a Minnesota corporation with its principal place of business at 3255 Hennepin Avenue South, Minneapolis, Minnesota.

12. Defendant InnerBalance LLC is, on information and belief, a Colorado limited liability company purportedly owned and operated by Eisele and Graham, with its principal place of business in Fort Collins, Colorado.

13. Defendant InnerBalance Health Center, LLC (f/k/a InnerBalance, A Natural Approach to Recovery, PC, LLC) is, on information and belief, a Colorado limited liability company, owned and operated by Eisele and/or Graham, with its principal place of business in Fort Collins, Colorado.

14. Defendant InnerBalance Health Systems, LLC (f/k/a InnerBalance Health Recovery Centers, LLC) is, on information and belief, a Colorado limited liability company owned and operated by Eisele and/or Graham, with its principal place of business in Fort Collins, Colorado.

15. Defendant Eisele is, on information and belief, a citizen and resident of Colorado.

16. Defendant Graham is, on information and belief, a citizen and resident of Colorado.

17. This Court has jurisdiction over the subject matter of this action under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338, and has supplemental jurisdiction under 28 U.S.C. § 1367(a) over claims under state law. This court also has jurisdiction over the subject matter of this action under 28 U.S.C. § 1332, in that this is an action between citizens of different states, and the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

18. This Court has personal jurisdiction over the Defendants. InnerBalance has breached a Franchise Agreement which was executed and partially performed by InnerBalance in Minnesota. InnerBalance has contractually consented to the jurisdiction of this Court. Defendants Eisele and Graham are principals of InnerBalance, and have executed documents personally guarantying InnerBalance's performance under the

Franchise Agreement. Eisele and Graham have acted in Minnesota in partial performance of obligations under the Franchise Agreement and their personal guarantees. Eisele and Graham have breached their personal guaranties. InnerBalance Health Center and InnerBalance Health Systems have, on information and belief, purported to act under, and reaped benefits from, a Franchise Agreement which was executed and at least partially performed in Minnesota, and which contains a forum selection clause selecting Minnesota as the proper forum for this action.

19. Venue is proper in this district under 28 U.S.C. § 1391.

## BACKGROUND

20. Health Recovery Center provides chemical dependency treatment services.

21. Health Recovery Center was founded in 1981, by Joan Mathews Larson.

22. Ms. Larson became involved with chemical dependency treatment as a result of a family tragedy. Ms. Larson's husband died of a heart attack in 1970 at the age of 42. Ms. Larson' teenage son Rob, in the wake of his father's death, became addicted to alcohol. Although he completed in-patient treatment at a hospital, Rob continued to suffer from depression and mood swings, and shortly afterward he took his own life, at the age of 17.

23. After her son's death, Ms. Larson sought to develop an alternative to the traditional treatment for chemical dependency, which focused on "talk therapy," and had been ineffective for her son.

24. As a result of her efforts, Ms. Larson developed a unique, holistic chemical dependency treatment system ("the Health Recovery treatment model"), which combines therapy with extensive laboratory testing, bio-chemical restoration and repair, nutrition

counseling and nutrient therapies. The Health Recovery treatment model seeks to bio-chemically correct cravings, mood swings, depression, anxiety, and other symptoms often experienced by people with chemical dependency problems.

25. The Health Recovery treatment model's program of biochemical restoration and repair and nutrient therapy includes the use of medically prescribed intravenous solutions and nutritional supplements. The precise course of treatment is tailored to the client's specific chemical dependency problem and the results of the client's lab work.

26. The treatment methods, processes and formulations used in the Health Recovery treatment model are set forth in a five-volume Operations Manual, which is confidential and proprietary.

27. Since it opened in 1981, Health Recovery Center has used the Health Recovery treatment model to successfully treat thousands of people seeking to overcome chemical dependency.

28. Health Recovery Center owns U.S. Trademark Registration No. 2,296,150, for the mark HEALTH RECOVERY CENTER, INCORPORATED, for use in connection with "counseling and treatment services for drug and alcoholic problems, personal and emotional problems, food addiction, depression, cerebral allergy and candida related complex problems." A copy of that trademark registration is attached as Exhibit F to this Complaint.

29. Health Recovery Systems has exclusive rights to franchise the Health Recovery treatment model. Health Recovery Systems also has a license to the HEALTH RECOVERY CENTER, INCORPORATED trademark, with a right to sublicense franchisees.

30. In August 2000, InnerBalance entered into a Franchise Agreement with Health Recovery Systems, under which InnerBalance would operate a chemical dependency treatment center using the Health Recovery treatment model in the area of Fort Collins, Colorado. The Franchise Agreement was executed by Eisele on behalf of InnerBalance. See Exhibit A.

31. Although the Franchise Agreement was between InnerBalance and Health Recovery Systems, Inc., InnerBalance has recently asserted that two other entities–InnerBalance Health Center and InnerBalance Health Systems–not InnerBalance, have acted as franchisees under the Franchise Agreement.

32. At no time have Plaintiffs entered into any Franchise Agreement or other agreement with InnerBalance Health Center or InnerBalance Health Systems. At no time have Plaintiffs authorized InnerBalance Health Center or InnerBalance Health Systems to use any of Plaintiffs' trademarks, advertising or educational materials or authorized them to access or use Plaintiffs' confidential, proprietary and trade secret information. Nor have Plaintiffs ever approved or authorized the transfer of any franchise from InnerBalance to InnerBalance Health Center or InnerBalance Health Systems.

33. Eisele and Graham executed personal guarantees assuming personal responsibility for InnerBalance's performance under the Franchise Agreement, and accepting personal liability for InnerBalance's failure to comply with the Franchise Agreement. See Exhibits D and E.

34. As part of the Franchise Agreement, InnerBalance received extensive training in the Health Recovery treatment model and an Operations Manual detailing the use and implementation of the Health Recovery treatment model.

35. InnerBalance also received marketing materials, including printed brochures, television ads, an informational video featuring Joan Larson and bearing the HEALTH RECOVERY CENTER, INCORPORATED trademark.

36. Many of these materials were part of a standard "response packet" developed by Plaintiffs to be sent in response to inquiries from potential clients. The response packets explained the Health Recovery treatment model and its origins, and how it differs from traditional approaches to chemical dependency treatment.

37. From the start of the franchise relationship, Plaintiffs experienced problems with InnerBalance.

38. Health Recovery Systems worked to bring InnerBalance into compliance with the terms of the Franchise Agreement, but these efforts were to no avail.

39. On August 27, 2004, Health Recovery Systems gave InnerBalance a Notice of Default, which:

a) identified each of InnerBalance's known breaches of the Franchise Agreement;

b) gave InnerBalance 60 days to cure its breaches; and

c) provided that if InnerBalance did not cure, the Franchise Agreement would terminate effective 90 days from the date of the Notice.

A copy of this Notice is attached as Exhibit G to this Complaint.

40. InnerBalance did not cure all the defaults identified in the August 27, 2004 Notice.

41. The Franchise Agreement between InnerBalance and Health Recovery Systems terminated on November 25, 2004, ninety days from the date of the August 27, 2004 Notice of Default.

42. Section 17.1 of the Franchise Agreement sets forth certain of InnerBalance's obligations upon termination. These include:

a) that InnerBalance immediately cease any use of Health Recovery Center trademarks;

b) that InnerBalance promptly return to Health Recovery Systems the operations manual and all other confidential information; and

c) that InnerBalance direct the transfer of all telephone listings, telephone numbers and directory advertising, to Health Recovery Systems.

43. Further, Section 18.2 of the Franchise Agreement, as amended, provides that after termination of the Franchise Agreement, InnerBalance:

> may not solicit, contact or do any work for any customer or potential customer developed as a HEALTH RECOVERY franchise. . . nor may [InnerBalance] operate a business which incorporates bio-chemical restoration and repair, except to the extent that [InnerBalance] can demonstrate the operation of a business which incorporates bio-chemical restoration and repair was being done by [InnerBalance] prior to this Franchise Agreement. . . . Notwithstanding any prior operation of a business. . . [InnerBalance] may not use any materials, systems, formulas, processes or methods which were developed as a HEALTH RECOVERY franchisee.

Exhibit C.

44. InnerBalance has not complied with its post-termination obligations under the Franchise Agreement.

45. Despite termination, Defendants are continuing to use Health Recovery Center trademarks, including but not limited to the federally registered HEALTH RECOVERY CENTER, INCORPORATED trademark.

46. Defendants have, on information and belief, used the HEALTH RECOVERY CENTER, INCORPORATED trademark or confusingly similar variants:

a) In television advertising;

b) In online telephone directories;

c) In signage at its offices;

d) When answering the telephone;

e) On business cards handed out to prospective clients;

f) In printed brochures; and

g) In video tapes.

47. Despite termination, Defendants have, on information and belief, failed to return and are continuing to use in the operation of their business the Health Recovery Systems Operations Manual and other confidential, proprietary and trade secret information and materials.

48. Despite termination, Defendants continue to use telephone listings, telephone numbers and directory advertising, which should have been transferred to Health Recovery Systems.

49. Despite termination, Defendants have continued to run television ads prepared by Plaintiffs and using the HEALTH RECOVERY CENTER, INCORPORATED trademark.

50. Despite termination, Defendants have continued to send to prospective clients the response packet prepared by Plaintiffs and bearing the Health Recovery Center name.

51. More recently, Defendants have used response packets which copy text from Plaintiffs' response packet verbatim, but omit the Health Recovery Center name.

52. Despite termination, InnerBalance is continuing to operate a business which incorporates bio-chemical restoration and repair, in violation of the non-compete provision of the Franchise Agreement.

**COUNT I**
**(Federal Trademark Infringement)**
**(Violation of 15 U.S.C. § 1114)**

53. Plaintiffs restate and reallege paragraphs 1 through 52.

54. Health Recovery Center is the owner of the registered trademark HEALTH RECOVERY CENTER, INCORPORATED. That registration is valid, subsisting, and in full force and effect.

55. The use of the trademark HEALTH RECOVERY CENTER, INCORPORATED, and confusingly similar variants, by InnerBalance, InnerBalance Health Center, InnerBalance Health Systems, Eisele and Graham in connection with their chemical dependency treatment business is unauthorized, at least since the termination of the Franchise Agreement, and is likely to cause confusion, or to cause mistake or to deceive, and constitutes infringement of a federally registered trademark under the Lanham Act, 15 U.S.C. § 1114.

56. Defendants' actions in violation of 15 U.S.C. § 1114 have been willful.

57. Defendants' actions have caused, and will continue to cause, irreparable harm to Plaintiffs unless enjoined.

**COUNT II**
**(Federal Unfair Competition)**
**(Violation of 15 U.S.C. § 1125(a))**

58. Plaintiffs restate and reallege paragraphs 1 through 57.

59. Health Recovery Center is the owner of the registered trademark HEALTH RECOVERY CENTER, INCORPORATED. That registration is valid, subsisting, and in full force and effect.

60. Defendants' use of the trademark HEALTH RECOVERY CENTER, INC., the name Health Recovery Center, and confusingly similar variants, and the use of Plaintiffs' advertising and educational materials, in connection with Defendants' chemical dependency treatment business, is unauthorized at least since the termination of the Franchise Agreement, and is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with Plaintiffs, or as to the origin, sponsorship, or approval of Defendants' goods and commercial activities by Plaintiffs.

61. Defendants' actions violate the Lanham Act, 15 U.S.C. § 1125(a).

62. Defendants' actions in violation of 15 U.S.C. § 1125(a) have been willful.

63. Defendants' actions have caused, and will continue to cause, irreparable harm to Plaintiffs unless enjoined.

**COUNT III**
**(Breach of Franchise Agreement)**

64 Plaintiffs restate and reallege paragraphs 1 through 63.

65. On August 28, 2000, Health Recovery Systems and InnerBalance entered into a Franchise Agreement relating to the operation of a chemical dependency treatment business in the area of Fort Collins, Colorado.

66. Pursuant to Section 16.2(C) of the Franchise Agreement, Health Recovery Systems terminated InnerBalance as a franchisee effective November 25, 2004.

67. Pursuant to Section 17.1 of the Franchise Agreement, InnerBalance's obligations upon termination include the following:

a) immediately cease any use of Health Recovery Center trademarks;

b) promptly return to Health Recovery Systems the Operations Manual and all other confidential information; and

c) direct the transfer of all telephone listings, telephone numbers and directory advertising, to Health Recovery Systems.

68. Pursuant to Section 18.2 of the Franchise Agreement as amended, following termination of the Franchise Agreement InnerBalance is prohibited from:

a) soliciting, contacting or doing any work for any customer or potential customer developed as a franchisee;

b) operating a business which incorporates bio-chemical restoration and repair, except to the extent that InnerBalance can show that it operated such a business prior to the Franchise Agreement; and

c) using materials systems, formulas, processes or methods developed as a franchisee.

69. InnerBalance has breached its post-termination obligations under the Franchise Agreement.

70. Although the Franchise Agreement has an arbitration clause, Article 19.4 of the Franchise Agreement provides that actions for injunctive or other extraordinary relief are not subject to arbitration, if aimed at protecting the trademarks, compelling compliance with post-termination obligations, or enjoining any violation of law.

71. InnerBalance's breach of its contractual obligations to Plaintiffs has been willful and deliberate and has, and will continue to, irreparably harm Plaintiffs unless enjoined by this Court.

**COUNT IV**
**(Breach of Personal Guarantees and Assumptions of Franchisee's Obligations)**

72. Plaintiffs restate and reallege paragraphs 1 through 71.

73. In connection with the execution of the Franchise Agreement, Eisele and Graham each executed a Personal Guaranty and Assumption of Franchisee's Obligations.

74. The Personal Guaranty and Assumption of Franchisee's Obligations executed by Eisele and Graham provides that Eisele and Graham each "personally and unconditionally":

> guarantees . . . that the franchisee shall punctually pay and perform each and every undertaking, agreement and covenant set forth in the [Franchise] Agreement; and . . . agrees to be personally bound by, and personally liable for the breach of, each and every provision of the [Franchise] Agreement.

See Exhibits D and E.

75. Pursuant to Section 16.2(C) of the Franchise Agreement, Health Recovery Systems terminated InnerBalance as a franchisee effective November 25, 2004.

76. Pursuant to Section 17.1 of the Franchise Agreement, Inner Balance had the following obligations upon termination:

a) immediately cease any use of Health Recovery Center trademarks;

b) promptly return to Health Recovery Systems the operations manual and all other confidential information; and

c) direct the transfer of all telephone listings, telephone numbers and directory advertising, to Health Recovery Systems.

77. Pursuant to Section 18.2 of the Franchise Agreement as amended, following termination of the Franchise Agreement InnerBalance is prohibited from:

a) soliciting, contacting or doing any work for any customer or potential customer developed as a franchisee;

b) operating a business which incorporates bio-chemical restoration and repair, except to the extent that InnerBalance can show that it operated such a business prior to the Franchise Agreement; and

c) using materials systems, formulas, processes or methods developed as a franchisee.

78. InnerBalance has breached the post-termination obligations under the Franchise Agreement.

79. InnerBalance has also breached many other of its obligations under the Franchise Agreement, including but not limited to obligations relating to the payment of royalties to Health Recovery Systems.

80. Despite having executed Personal Guarantees and Assumptions of Franchisee's Obligations, Eisele and Graham have not brought InnerBalance into compliance with its obligations under the Franchise Agreement.

81. Eisele and Graham are in breach of their Personal Guarantees and Assumptions of Franchisee's Obligations.

82 Eisele's and Graham's breach of their Personal Guarantees and Assumptions of Franchisee's Obligations has been willful and deliberate and has, and will continue to, irreparably harm Plaintiffs unless enjoined by this Court.

**COUNT V**
**(Misappropriation of Trade Secrets)**

83. Plaintiffs restate and reallege paragraphs 1 through 82.

84. Defendants obtained access to Plaintiffs' trade secrets relating to the Health Recovery treatment model and the operation of a chemical dependency treatment program that incorporates bio-chemical restoration and repair, as a result of the Franchise Agreement between InnerBalance and Health Recovery Systems, and under circumstances giving rise to a duty to maintain the secrecy and limit the use of said trade secrets.

85. Plaintiffs' trade secrets derive actual and potential independent economic value from not being known to, and not being readily ascertainable by proper means by other persons who can obtain economic value from their disclosure and/or use.

86. Plaintiffs have taken reasonable measures to maintain the secrecy of their trade secrets.

87. Defendants knew, or had reason to know, that Plaintiffs intended or expected the secrecy of Plaintiffs' trade secrets to be maintained.

88. Defendants, knowing that they possessed Plaintiffs' trade secrets, deliberately misappropriated said trade secrets, at least by failing to return them to Plaintiffs upon termination of the Franchise Agreement and by continuing to use them in the operation of their chemical dependency treatment business.

89. Defendants have misappropriated Plaintiffs' trade secrets in violation of the Uniform Trade Secrets Act, as enacted by Minnesota, Minn. Stat. §325C.01 et seq.

90. Said misappropriation of trade secrets has been committed intentionally, willfully, and maliciously, all to the profit of Defendants and to the damage and injury of Plaintiffs, which have been and will continue to be injured irreparably unless said misappropriation is enjoined by this Court.

**COUNT VI**
**(Conversion)**

91. Plaintiffs restate and reallege paragraphs 1 through 90.

92. Defendants have wrongfully converted to their own use and benefit, property, including but not limited to the Operations Manual, advertising and educational material, and other confidential and proprietary information and property of Plaintiffs.

93. Section 6.3(E) of the Franchise Agreement provides that the Operations Manual remains the property of Health Recovery Systems, that InnerBalance shall not copy or reproduce any part of the Operations Manual, and that InnerBalance shall return the Operations Manual upon termination of the Franchise Agreement.

94. Despite the termination of the Franchise Agreement and despite demand, Defendants have refused to return the Operations Manual, and to the contrary have retained in it and, on information and belief, continue to use it, as well as other information and property of Plaintiffs, in the operation of Defendants' chemical dependency treatment business.

95. Defendants have knowingly and willfully interfered with Plaintiffs' property and information without justification, and in violation of Plaintiffs' rights in Plaintiffs' property and information.

96. Defendants' acts of conversion have been intentional and willful and all to the profit of Defendants and to the damage and injury of Plaintiffs, which have been and will continue to be injured irreparably unless said conversion is enjoined by this Court.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Health Recovery Center and Health Recovery Systems pray that the Court enter Judgment:

1. In favor of Plaintiffs and against Defendants on all of Plaintiffs' claims.

2. Preliminarily, and permanently thereafter, enjoining and restraining InnerBalance, InnerBalance Health Center, InnerBalance Health Systems, Eisele, Graham, their officers, agents, subsidiaries, servants, partners, employees, attorneys, and all others in active concert or participation with them, from:

a) Using the HEALTH RECOVERY CENTER, INCORPORATED trademark or any confusingly similar variation thereof, including but not limited to "Health Recovery" and "Health Recovery Center";

b) Holding themselves out as affiliated with, or a franchisee of, Plaintiffs;

c) Using or copying promotional materials, brochures, educational materials or advertising prepared by Plaintiffs;

d) Making any further use of Plaintiffs' Operations Manual or Plaintiffs' other confidential or trade secret information, including but not limited to Plaintiffs' training video and audio tapes, lectures, group therapy session outlines and handouts, group videos, individual therapy session outlines and handouts, group and individual bio-chemical session outlines and handouts, and medical and lab procedures, forms and handouts.

e) operating a business which incorporates bio-chemical restoration and repair;

f) soliciting, contacting or doing any work for any customer or potential customer developed as a Health Recovery franchise;

g) using any materials, systems, formulas, processes or methods which were developed as a Health Recovery franchisee.

3. Preliminarily, and permanently thereafter, requiring InnerBalance, InnerBalance Health Center, InnerBalance Health Systems, Eisele, Graham, their officers, agents, subsidiaries, servants, partners, employees, attorneys, and all others in active concert or participation with them, to:

a) deliver to Plaintiffs all original and all copies, whether paper, electronic or otherwise, of: i) Plaintiffs' Operations Manual; ii) Plaintiffs' other confidential or trade secret information, including but not limited to

training video and audio tapes, lectures, group therapy session outlines and handouts, group videos, individual therapy session outlines and handouts, group and individual bio-chemical session outlines and handouts, and medical and lab procedures, forms and handouts; and iii) all materials, documents or notes, based upon or reflecting information contained in Plaintiffs Operations Manual or Plaintiffs' other confidential or trade secret information.

b) direct the transfer to Health Recovery Systems of all telephone numbers, telephone listings and directory advertising used by Defendants in connection with chemical dependency treatment services, including but not limited to: 970-416-0616; 866-244-8866; 720-941-0442; 866-557-7848; and 970-495-4688 and listing in the DexOnline.com and QuestDex telephone directories; and

c) return to Plaintiffs all material using or displaying Plaintiffs' HEALTH RECOVERY CENTER, INCORPORATED trademark, or confusingly similar variants, including "Health Recovery" and "Health Recovery Center," including but not limited to brochures, advertising materials, video and audio tapes.

4. Requiring that each Defendant file with the Court, within five days of the date of any Order of prohibitive or mandatory, preliminarily or permanent, injunction directed to that Defendant, a declaration sworn on penalty of perjury confirming compliance with said Order and stating the exact manner and method of compliance.

5. Awarding Plaintiffs their reasonable attorneys' fees, costs, expenses, and interest pursuant to 15 U.S.C. § 1117(a), Minn. Stat. § 325C.04, the Franchise Agreement, and other applicable law.

6. Awarding Plaintiffs such other relief as the Court may deem just and proper.

Dated: May 4, 2005

DORSEY & WHITNEY LLP

By: ______________________
J. Thomas Vitt (No. 183,817)
Sri K. Sankaran (No. 204,304)
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402-1498
Telephone: (612) 340-2600

Attorneys for Plaintiffs

DORSEY

SRI K. SANKARAN
(612) 340-8832
FAX (612) 340-8856
sankaran.sri@dorsey.com

May 4, 2005

RECEIVED

MAY 04 2005

CLERK
U.S. DISTRICT COURT
MINNEAPOLIS, MINNESOTA

**By Messenger**

Clerk of Court
United States District Court
District of Minnesota
202 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415

Re: Health Recovery Center, Inc., et al. v. InnerBalance LLC, et al.

Dear Clerk of Court:

Enclosed for filing are the following documents:

1. Civil Cover Sheet;
2. Complaint;
3. Plaintiff's Rule 7.1 Disclosure (two copies);
4. Notice of Motion for Preliminary Injunction (two copies);
5. Motion for Preliminary Injunction (two copies)
6. Plaintiffs' Memorandum in Support of Motion for Preliminary Injunction (two copies);
7. Declaration of Joan Mathews Larson (two copies);
8. Declaration of Cynthia Mathews (two copies);
9. Declaration of Shirley Bingham (two copies);
10. Declaration of Gregory A. Bailey (two copies); and
11. [proposed] Order Granting Plaintiffs' Motion for Preliminary Injunction.

DORSEY



Also included is a Summons. Please execute the Summons, and return it, along with a court-file-stamped copy of the above documents, copies provided, with the messenger. Our firm check in the amount of $250 for the filing fee is also included.

Thank you for your assistance.

Sincerely,

Sri K. Sankaran

SKS/rma

Enclosures

cc w/encs.: J. Thomas Vitt, Esq.