05-880 JMR/FLN

HEALTH RECOVERY SYSTEMS, INC
SECOND ADDENDUM TO THE FRANCHISE AGREEMENT

This is the Second Addendum to the Franchise Agreement between Health Recovery Systems, Inc. and InnerBalance LLC (Franchisees) to amend said Franchise Agreement dated August 28, 2000 as follows:

1. Paragraph 4.3 is amended to include:

4.3 Territorial Rights. The grant of the franchise and license described in Section 4.1 is limited to the conduct of the Business, utilizing the Marks, in the Territory. The Affiliate may operate outside the Territory. The Affiliate may operate within the Territory in cooperation with the Franchisee upon a mutual agreement of the Affiliate and Franchisee. The Company may grant other franchisees and other parties the right to operate any other HEALTH RECOVERY businesses outside the Territory and, if Franchisee's sales are below $500,000 for any 12 month running period, inside the Territory; provided, however, that Franchisee shall first be given ninety (90) days to improve sales to annualize $500,000. If Franchisee improves sales to an annualized amount of $500,000 or greater, then Franchisee shall be entitled to continued exclusivity within the territory.

2. Paragraph 4.4 is amended to provide

4.4 Franchisee's Acknowledgement. Franchisee is aware and acknowledges its awareness that similar or identical services to those provided by the Business are or may be offered near the Territory by the Affiliate, by other HEALTH RECOVERY franchisees or by other parties under the HEALTH RECOVERY name and the marks licensed hereunder, or within the Territory asset forth in Section 4.3.

3. Paragraph 7.14 is amended as follows:

7.14 Confidential Information. The Franchisee shall not, during the duration of this Agreement, the duration of any Successor Franchise Agreement, or for a period of two (2) years thereafter, use, or divulge for the benefit of any other person(s), partnership, proprietorship, association, corporation or entity, any confidential information, knowledge or know-how concerning the systems of operation, programs, services, products, customers or practices of the Franchisee and/or of the Company and/or pertaining to the System which may be communicated to the Franchisee.

4. Paragraph 9.1 is amended as follows:

9.1 Initial Franchise Fee. The Franchisee shall pay to the Company the Initial Franchise Fee upon the execution of this Agreement. The Initial Franchise Fee



**Exhibit C**

shall be non-refundable and deemed fully earned by the company when paid, except as otherwise expressly stated to the contrary in this Agreement in Sections 3.5, 6.1, and 16.1.

5. Paragraph 9.3 is amended as follows:

9.3 Payment. On or before the 10th of each month, the Franchisee shall submit to the Company on a form prescribed by the Company, a correct statement, signed by the Franchisee, of the Franchisee's Gross Revenues for the previous calendar month. Notwithstanding any designation by the Franchisee, the Company shall have the discretion to apply any payments from customers of the Franchisee to any past due indebtedness of the Franchisee.

6. Paragraph 10.2 is hereby amended as follows:

10.2 Marketing Programs. Franchisee agrees to implement any promotional programs or services developed and offered by the Company from time to time; provided, however, that any such marketing shall not necessarily exceed the national advertising fee and fund, the local advertising requirement, or the cooperative advertising fee and fund established at Sections 10.3, 10.4 or 10.5, respectively.

7. Paragraph 11.3 is hereby amended as follows:

11.3 Indemnification. The Franchisee agrees at all times to defend at the Franchisee's own cost, and to indemnify and hold harmless to the fullest extent permitted by law, the Company, the Affiliate and corporate subsidiaries, affiliates, successors, assigns and designees, and their respective directors, officers, employees, agents, shareholders, designees, and representatives (the Company and all other hereinafter referred to collectively as "Indemnitees") from all losses and expenses (as hereinafter defined) incurred in connection with any action, suit, proceeding, claim, demand, investigation, or formal or informal inquiry (regardless of whether same is reduced to judgment) or any settlement thereof which arises out of or is based upon any of the following: the Franchisee's alleged infringement or any other violation or any other alleged violation of any patent, or copyright or other proprietary right owned or controlled by third parties except as provided in Section 8.4; the Franchisee's alleged violation or breach of any contract, federal, state or local law, regulation, ruling, standard or directive or of any industry standard; libel, slander or any other form of defamation by the Franchisee; the Franchisee's alleged violation or breach of any warranty, representation, agreement or obligation in this Agreement; any acts, errors, or omissions of the Franchisee or any of its agents, servants, employees, contractors, partners, proprietors, affiliates or representatives; the inaccuracy, lack of authenticity or nondisclosure of any information by any customer of the Business; any service provided by the Franchisee at, from or related to the operation at the Business; any services or goods provided by any affiliated or nonaffiliated

participating entity, except the Company or the Affiliate; any action by any customer of the Business; and, any damage to the property of the Franchisee or the Company, their agents or employees, or any third person, firm or corporation, unless such losses, claims, costs, expenses, damages, or liabilities were caused wholly or in part through the active or passive negligence of the Company or any of its agents or employees, or resulted from any strict liability imposed on the Company or any of its agents or employees.

8. Paragraph 14.1 is hereby amended as follows:

14.1 Assignment by the Company. The Company shall have the right to assign this Agreement provided that: (i) the assignee, at the time of such assignment, is financially responsible and economically capable of performing the obligations of the company hereunder; and (ii) the assignee assumes and agrees to perform such obligations.

Specifically, and without limitation to the foregoing, the Franchisee expressly affirms and agrees that the Company, its Affiliate and its and their shareholders may sell its assets, its Marks, or its System outright to a third party; may go public; may engage in a private placement of some or all of its securities; may merge, acquire other corporations, or be acquired by another corporation; may undertake a refinancing, recapitalization, leveraged buyout or other economic or financial restructuring; and, with regard to any or all of the above sales, assignments and dispositions, the Franchisee expressly and specifically waives any claims, demands or damages arising from or related to the loss of association with or identification of the Company as Company hereunder; provided, however, that should the Assignee or successor entity substantially modify the formulas or procedures which are integral to the franchise itself, Franchisee shall have the option to terminate this agreement subject to the provisions of Alternative Dispute Resolution as described in Article XIX. See also the Company's Rights To Sell pursuant to Section 2.8 above.

Nothing contained in this Agreement shall require the Company to remain in the business franchised hereby or to offer services franchised hereunder, whether or not bearing the Marks, to the Franchisee in the event that the Company exercises its rights hereunder to assign its rights in this Agreement.

9. Paragraph 16.2 A (2) (v) is hereby amended to read as follows:

The Franchisee unreasonably fails, after notification of non-compliance, to comply with any federal, state or local law or regulation applicable to the operation of the Business: or

10. Paragraph 16.3 is hereby amended as follows:

16.3 Franchisee's Rights to Terminate.

A. Grounds. If the Franchisee is in substantial compliance with this Agreement and the Company breaches any material provision, term or condition, the Franchisee may terminate this Agreement as provided herein.

(1) Events in which termination shall be effective immediately upon the mailing or delivery of written notice of termination and with respect to which the Franchisee shall have no right to cure the default:

ii. Company is convicted of, or pleads guilty to, or pleads no contest to, any criminal statute which carries a possible penalty (whether imposed or not) of imprisonment in excess of 30 days); or

iii. The Company voluntarily or otherwise abandons the Business by failing to operate it for a period of five (5) consecutive business days or more, unless the Business has been closed for a purpose approved by the Company; or

iv. The Company, after curing any failure of the Company to comply with any requirement of this Agreement after being given notice thereof and a reasonable opportunity to cure such failure, which in no event need be more than thirty (30) days, engages in the same non-compliance whether or not such non-compliance is corrected after notice; or

v. The Franchisee makes a Transfer or attempted Transfer of the Agreement or of the Business without compliance with the provisions of Sections 14.1; or

*vi. **The Franchisee determines, under an objectively reasonable standard, that operations by the Company will result in substantial danger to public health or safety. The parties expressly agree that any and all disputes regarding allegations of danger to public health or safety must be resolved through the alternative dispute resolution process as described in Article XIX, prior to any termination of this agreement by the Franchisee.***

(2) Events in which termination shall be effective within thirty (30) days from the date of such written notice of termination and with respect to which the Company shall have an opportunity to cure any such default within such thirty (30) day period:

(i) Default by the Company of any other obligations under the Agreement; or

(ii) The Company or the Business is declared bankrupt or insolvent, or all or a substantial part of the assets of the Business are assigned to or for the benefit of any creditor, or the Company admits its inability to pay its debts as they become due; or

(iii) The Company and the Franchisee agree in writing to terminate the Franchise; or

(iv) The Company makes any material misrepresentation relating to the acquisition of the Business by the Franchisee or the

Company or the Affiliate engage in conduct which reflects materially and unfavorably upon the operation and reputation of the Business, the Marks or System; or

(v) The Company unreasonably fails, after notification of non-compliance, to comply with any Federal, State or local law or regulation applicable to the operation of the Business; or

(vi) The Company is seized, taken over or foreclosed; or a final judgment against the Company is unsatisfied for thirty days (unless a supersedeas or other bond has been filed); or a levy of execution has been made upon any property used in the Business and is not discharged within five days of such levy; or

(vii) The Company is involved in any act or conduct which materially impairs the goodwill associated with the Business, Marks or the System and the Company fails to cure such act of conduct within twenty-four (24) hours of the receipt of notice thereof.

(B) Notwithstanding anything to the contrary contained in this Article 16, the Company has the right to survey all completed projects. If, in any one calendar year, 25% or more of the Franchisee's customers are dissatisfied, the Company, at its option, may take over the Territory and terminate this Agreement; provided, that Franchisee shall have the right to conduct its own satisfaction survey. If the Franchisee's satisfaction survey conflicts with the Company's survey results, the parties agree to submit the matter to Arbitration pursuant to Article XIX of this agreement. If the Company takes over the Territory it will pay the Franchisee 50% of the Franchisee's last three (3) months sales.

11. Paragraph 16.3 C is hereby amended as follows:

16.3 C Waiver. The Franchisee may, in its sole discretion, waive its right to terminate under one or more sections of this Article as set forth above. Said waiver shall not be deemed continuing nor shall it be considered a precedent for this Agreement.

12. Paragraph 18.4 is hereby amended as follows:

18.1 In-Term covenant Not to Compete. The Franchisee agrees that during the duration of this Agreement, and the duration of any Successor Agreement, the Franchisee will not, either directly or indirectly, engage in any other business which offers, provides or sells the same or similar services provides by Franchisee hereunder, or engage in any of the activities which this Agreement contemplates will be engaged in by the Franchisee, or offers or sells any other service (or component thereof) which comprises or may in the future comprise a part of the System (or any service confusingly similar thereto) as an owner, partner, investor, shareholder, director, officer, employee, principal, agent, advisor, or consultant,

nor shall the Franchisee divert any business from the Business to any other entity. It is the intention of this provision to preclude not only direct competition but also all forms of indirect competition, such as consultation for competitive businesses, service as an independent contractor for such competitive businesses, or any assistance or transmission of information of any kind or nature whatsoever which would be of any material assistance to a competitor.

During the term of this Agreement or any Successor Agreement, and for one (1) year thereafter, the Franchisee shall not hire personnel of the Company or of any other franchisee of the Company.

It is the intention of this provision that any person or entity having any legal or beneficial interest in or traceable to, down or through the Franchisee, directly or indirectly, be bound by the provisions of this covenant.

13. Paragraph 18.2 is hereby amended as follows:

18.2 After Termination. The Franchisee may not solicit, contact or do any work for any customer or potential customer developed as a HEALTH RECOVERY franchise at any time nor may they operate a business which incorporates bio-chemical restoration and repair, except to the extent that the Franchisee can demonstrate the operation of a business which incorporates bio-chemical restoration and repair was being done by the Franchisee prior to the this Franchise Agreement or which, at or after the time of disclosure by the Company to the Franchisee, has become a part of the public domain through publication or communication by others (but in no event through any act of the Franchisee). Notwithstanding any prior operation of a business which incorporates bio-chemical restoration and repair, the Franchisee may not use any materials, systems, formulas, processes, or methods which were developed as a HEALTH RECOVERY franchise.

14. Paragraph 18.4 is hereby amended as follows:

18.4 Enforcement of Covenants Not to Compete. The Franchisee acknowledges that violation of the covenants not to compete contained in this Agreement may result in immediate and irreparable injury to the Company for which no adequate remedy at law will be available. Accordingly, the Franchisee hereby acknowledges that the Franchisor may seek to obtain the entry of an injunction prohibiting any conduct by the Franchisee in violation of the terms of those covenants not to compete set forth in this Agreement. Further, the Franchisee expressly agrees that the existence of any claims it may have against the Company, whether or not arising from this Agreement, shall not constitute a defense to the enforcement by the Company of the covenants not to compete set forth in this Agreement. The Franchisee further agrees to pay all costs and expenses (including reasonable attorneys' and experts' fees) incurred by the

Company in connection with the enforcement of those covenants not to compete set forth in this Agreement.

15. Article 18 is hereby amended as follows:

*ADD: Section 18.5*

18.5 The parties to this agreement agree that in the event this agreement is terminated, the Franchisees shall be entitled to return to their pre-existing practice of health recovery which is presently incorporated under the laws of the State of Colorado under the name InnerBalance, a Natural Approach to Recovery, LLC, subject to Article XVII, *OBLIGATIONS UPON TERMINATION.*

16. Article 7 is hereby amended as follows:

*ADD: Section 7.15*

*7.15* <u>800 Telephone numbers</u>. Franchisee agrees that the use of an 800, or any other free incoming call, telephone number is limited to within the individual state in which the franchise is located and cannot be listed as an interstate number for national information use.

All other terms and conditions of said contract shall remain the same. A copy of this document may be executed by each party, separately, and when each party has executed a copy thereof, such copies taken together shall be deemed to be a full and complete contract between the parties. Facsimile signatures shall be considered binding until original signatures can be obtained.

"FRANCHISEE"

[signature]

"COMPANY"
HEALTH RECOVERY SYSTEMS, INC.

Joan Matthews Larson
President



TOTAL P.14