UNITED STATES DISTRICT COURT
District of Minnesota

Health Recovery Center, Inc., a Minnesota corporation, and Health Recovery Systems, Inc., a Minnesota corporation,

Plaintiffs,

v.

Case Number: 05-CV-880 JMR/FLN

InnerBalance LLC, a Colorado limited liability company, InnerBalance Health Center, LLC, a Colorado limited liability company, InnerBalance Health Systems, LLC, a Colorado limited liability company, Joseph W. Eisele, and Ron Graham,

Defendants.

**DECLARATION OF RON GRAHAM**

I, Ron Graham, state as follows:

1. I am of sound mind and if called to testify would do so as contained herein.

2. I am a founder, Business Director for and a Managing Member of InnerBalance Health Systems, LLC f/k/a InnerBalance Health Recovery Centers, LLC and InnerBalance Health Center, LLC f/k/a Inner Balance, a Natural Approach to Recovery, P.C., LLC (collectively "InnerBalance"), and am familiar with the facts set forth herein.

3. I am familiar with the operations of InnerBalance at all times that they have been in existence through today.

4. InnerBalance's approach to addiction rehabilitation utilizes a biochemical approach to treating drug and alcohol addictions, which includes evaluating nutritional causes of addiction diseases and improving every aspect of our clients' nutrition, diet, and exercise, along with talk therapy and other traditional counseling methods. Major aspects of our approach include: (1) addressing the substances that must be kept out of the alcoholic's body (including alcohol and other drugs, such as nicotine, caffeine, and refined sugars); and (2) addressing the substances that must be restored (brain and body chemicals depleted by alcohol). We believe that alcohol destroys the vital nutrients (vitamins, minerals, and amino acids) that control mental function. The damage done by alcohol such as anxiety, depression, insomnia, impaired cognitive thinking, poor memory, tremors, headaches, shakiness, chronic fatigue, dizziness, and mood swings, may be undone by supplying nutrients in high dosages to correct the imbalances. I refer to this approach as biochemical repair and restoration. I had used this phrase for years before the franchise came into existence.

5. I have struggled with alcohol addiction in my past. In my personal struggle, starting in 1993, I discovered, through self-education, and then followed a biochemical-based approach to overcoming my addiction, which I attribute to my success. I have now been sober for 12 years.

6. In the mid 90's, with several others, I founded Inner Health, a business that focused on nutritional and holistic methods to approach various health problems, and worked there as a Health Coach. In 1997 I became a certified Primordial Sound Meditation instructor and in 1998 a Creating Health Educator from the Chopra Center.

7. In approximately 1997 I became interested in working in the field of treating alcohol and drug addiction. I have now worked in the alcohol and drug rehabilitation field in Fort Collins and Denver, Colorado for approximately the past eight years.

8. In 1998 I formed InnerBalance with Joe Eisele.

9. For approximately two years prior to becoming a franchisee of Health Recovery System, Inc. ("HRS"), from 1998 through 2000, InnerBalance, Joe Eisele and I operated a biochemical restoration and repair-based rehabilitation clinic to treat drug and alcohol additions on an outpatient basis in Fort Collins, Colorado.

10. InnerBalance's pre-franchise, 48-day (three times per week for 16 weeks), bio-chemical restoration and repair based, rehabilitation program conducted from 1998 through 2000 included, among other things, initial client intake conferences, initial doctor intake conferences, initial assessment and (if appropriate) detoxification of clients, laboratory testing of clients for nutritional deficiencies, nutritional therapy through supplements, intravenous nutrient therapy through drips and syringe pushes, traditional group therapy talking sessions, individual mental health counseling, individual biocounseling, and doctor follow-up. Similar activities were also conducted during the time that InnerBalance was a franchisee of HRS and continue to be conducted now that the franchise relationship has ended.

11. The table attached as Exhibit 3 is an accurate description of the types of services offered in connection with InnerBalance's programs before, during, and after InnerBalance's franchise relationship with HRS, indicating that the current 2005 post-franchise operations are almost identical to the pre-franchise activities and approach utilized by InnerBalance.

12. Attached as Exhibit 4 is a true and accurate copy of an InnerBalance marketing brochure distributed to potential clients during the pre-franchise period, made and kept in the regular course of InnerBalance's business activities. Although this brochure is undated, it shows InnerBalance's 1017 Robertson, Fort Collins, Colorado address. Among other things, the brochure discusses the effectiveness of "biochemical repair" to treat addiction and states, "Biochemical imbalances may underlie your addiction and be complicating your recovery," and "If you are an individual who has previously been through conventional treatment or is currently in the recovery process, evaluation and treatment of chemical imbalances may be of great value to you in supporting your sobriety."

13. InnerBalance operated at 1017 Robertson Street from January 1999 to April 2000. Attached as Exhibit 5 is InnerBalance's advertisement layout proof for the "yellow pages" dated October 20, 1999, made and kept in the regular course of InnerBalance's business activities, showing the 1017 Robertson address.

14. Attached as Exhibit 6 is a marketing letter, made and kept in the regular course of InnerBalance's business activities, utilized by InnerBalance, pre-franchise, between 1998 and 2000 discussing "biochemical vulnerability" among addicts and describing in detail the metabolic stabilization and screening process conducted by InnerBalance.

15. Attached as Exhibit 8 is a true and accurate copy of an article dated March 19, 2000 appearing in the Fort Collins Coloradoan, at 7, describing InnerBalance's biochemical-based rehabilitation program in place at that time, and describing InnerBalance's use of nutritional supplements, vitamins, and minerals, and limiting the intake of sugars and caffeine by its clients.

16. Attached as Exhibit 9 is a pre-franchise Fee Schedule for the InnerBalance 16 week program, made and kept in the regular course of InnerBalance's business activities, listing charges for various services, including "Education Group - Nutrition;" "Vitamins, minerals and amino acids;" and "Blood work up;" among other things, showing that the biochemical approach was utilized by InnerBalance during its pre-franchise period from 1998 through 2000.

17. Attached as Exhibit 10 is a pre-franchise program description, made and kept in the regular course of InnerBalance's business activities, listing various tests, assessments, and treatment plan aspects, including thyroid testing, blood sugar testing, vitamins and minerals testing, and amino acids testing, showing that the biochemical approach was utilized by InnerBalance during its pre-franchise period from 1998 through 2000.

18. As part of the Franchise Agreement dated August 28, 2000, InnerBalance, Joe Eisele, and I, through our attorney, David Herrera, Esq., negotiated the Second Addendum to the Franchise Agreement. Although the entire Franchise Agreement and Addenda were attached to Plaintiffs' Complaint as Exhibits A, B, and C, another true and correct copy of the Second Addendum is attached as Exhibit 11, for the Court's convenience. The Second Addendum, at paragraph 13, expressly allows InnerBalance to continue to operate a business, which incorporates biochemical restoration and repair, to the extent that InnerBalance can demonstrate the operation of such a business pre-franchise or to the extent that biochemical restoration or repair has become part of the public domain.

19. Upon delivery of HRS's August 27, 2004 letter indicating that it was terminating the franchise relationship with InnerBalance in 90 days, a copy of which is attached to the Complaint as

Exhibit G, HRS failed to provide any specific procedures or instructions regarding: (1) how clients then attending the six week rehabilitation program or clients enrolling during the next 90 days were to have been treated, handled, and transitioned into InnerBalance's or HRS's post-termination business; and (2) the manner and methods by which names, trademarks, marketing materials, telephone numbers, signage, and related items were to have been phased out and/or returned to HRS. For example HRS's national toll-free phone number 888-988-6889, controlled by HRS in Minnesota, continued to ring into InnerBalance's office until April 2005, adding to our confusion regarding transition. Also, HRS's website continued to list the Colorado locations as franchisees well into 2005, also adding to our confusion concerning transition.

20. As a result of HRS's lack of specific procedures concerning termination of their franchise relationship, InnerBalance was left to figure out on its own how to wind down its HRS franchise and transition back into its own, independent biochemical-based drug and alcohol rehabilitation clinic.

21. Receipt of the Complaint and Motion for Preliminary Injunction in this case was the first time since termination of our franchise relationship that HRS has demanded return of any materials. InnerBalance has been actively engaged in a commercial arbitration action against HRS since July 13, 2004 concerning their franchise relationship. That matter is scheduled for a six-day hearing before Arbitrator Edward C. Stringer on Monday, May 23, 2005. The materials now demanded may be evidence in that arbitration or this litigation. Other than as evidence, InnerBalance has no interest in and will return all proprietary information of HRS, including: HRS's Operations Manual; training video and audio tapes; lectures; group therapy session outlines

and handouts; group videos; individual therapy session outlines and handouts; group and individual bio-chemical session outlines and handouts; medical and lab procedure forms and handouts; materials documents or notes based upon or reflecting information contained in HRS's Operations Manual; and material displaying any Health Recovery Center, Inc. trademark, "Health Recovery," or "Health Recovery Center," including brochures, advertising materials, video tapes, and audio tapes; within 30 days of final conclusion of that arbitration and the instant litigation, including any appeals. InnerBalance is willing to return telephone numbers 970-416-0616, 866-244-8866, 720-941-0442, and 866-557-7848 to HRS immediately. Regarding 970-495-4688, I do not recall ever using that number to promote the franchise opetations of InnerBalance.

22. All current operations of InnerBalance are conducted under the name InnerBalance Health Systems, LLC or InnerBalance Health Center, LLC, the names of our business entities registered with the Colorado Secretary of State.

23. InnerBalance does not currently utilize or recommend any nutritional supplement formulas created by Bio-Recovery, Inc., HRS, Health Recovery Center, Inc., or their affiliated entities or agents. The nutritional supplements InnerBalance has provided to its clients from 1998 through 2000 and in 2005 are commercially available from multiple sources not affiliated with HRS.

24. Joan Mathews Larson, owner of HRS, has published purportedly "best-selling" books available on amazon.com and other sources entitled *Seven Weeks to Sobriety; Depression-Free, Naturally: 7 Weeks to Eliminating Anxiety, Despair, Fatigue, and Anger from Your Life;* and *Alcoholism the Biochemical Connection: A Breakthrough Seven-Week Self-Treatment*

*Program* describing the premise of her philosophy concerning the use of nutritional supplements to treat alcohol and drug addiction, and making that information available to any member of the general public who purchases her book.

25. If InnerBalance and I were ordered to no longer engage in biochemical restoration and repair, I would be deprived of earning a living and would have to start my career over in another line of work. I would lose the benefit of my reputation in Fort Collins and Denver, Colorado in the field of alcohol and drug rehabilitation which has been tied to a biochemical approach of rehabilitation since at least 1998, creating significant hurdles to reestablishing myself in the field, if that could even be accomplished at all. Such an Order would create extreme stress and financial hardships on my family and myself.

I declare under penalty of perjury that the foregoing is true and correct. Executed on May 13, 2005.

Ronald Graham
Business Director
InnerBalance Health Systems, LLC